## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

| | |
|---|---|
| NICHOLAS VAIL, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| SWIFT PORK COMPANY, d/b/a JBS USA | ) ) ) |
| Defendant. | ) ) |

Case No. 3:22-cv-354-DJH

## CLASS ACTION COMPLAINT AND JURY DEMAND

### INTRODUCTION

1. Plaintiff, NICHOLAS VAIL, and a putative class of his neighbors, bring this class action against Defendant SWIFT PORK COMPANY, d/b/a JBS USA (hereinafter, "Defendant") because of frequent, widespread, and recurrent noxious odors emissions from a pork processing facility into neighboring private properties.

2. Defendant owns and operates the JBS Pork Production Facility, a/k/a JBS Swift, (hereinafter, the "Facility") located at 1200 Story Avenue, Jefferson County, Louisville, Kentucky, which releases noxious odors onto Plaintiff's property causing property damage through public and private nuisance.

### PARTIES

3. At all times relevant hereto, Plaintiff Nicholas Vail has resided and intends to remain at 116 Pope Street, Louisville, Kentucky, 40206. Plaintiff is a citizen of the State of Kentucky.

4.  Defendant Swift Pork Company is a foreign corporation, organized under the laws of Delaware, with its principal place of business in Greeley, Colorado.

5.  Defendant's corporate activities are directed, controlled, and coordinated from its headquarters in Colorado.

6.  Defendant's registered agent is C T Corporation System, and can accept service at 421 West Main Street, Frankfort, Kentucky, 40601.

7.  Defendant, including its predecessors and agents, either constructed or directed the construction of the Facility and exercised control and ownership over the Facility at all relevant times hereto.

8.  Upon information and belief, Defendant and its agents have, at all times relevant hereto, operated and maintained the Facility located at 1200 Story Avenue, Jefferson County, Louisville, Kentucky, 40206.

## JURISDICTION AND VENUE

9.  This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are 100 or more Class Members and the aggregate amount in controversy exceeds Five Million Dollars ($5,000,000.00) exclusive of interest and costs. Additionally, Class Members are citizens of a state different from Defendant.

10. Venue is proper in this Court under 28 U.S.C. 1391(b)(2), because a substantial portion of the events or omissions giving rise to Plaintiff's claims took place in this District, and because much, if not all, of the property that is the subject of this action is situated in this District.

11. Independent of and in addition to original jurisdiction under CAFA, this Court has original jurisdiction because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332(a)(1).

## GENERAL ALLEGATIONS

12.     Defendant owns and operates the 300,000 square foot JBS Pork Production Facility located at 1200 Story Avenue in Louisville, Kentucky.[1]

13.     Defendant's business operations at the Facility involve pork processing, wherein the Facility processes 10,000 hogs per day,[2] often "through the night and into the morning."[3] The hogs at Defendant's Facility are produced into array of pork products, such as bacon, ham, deli meat, and pork cuts.[4]

14.     Pork meat processing facilities such as Defendant's typically involve a multiple-stage production processes that can be grouped into slaughtering, meat cutting, and further processing.

15.     Defendant's pork production process at the Facility begins with the arrival on site of live hogs from Defendant's company-owned farms.[5]

16.     At a typical pork production facility such as Defendant's, upon arrival, hogs are commonly stunned using $CO_2$. Hog carcasses are then typically put in a hot water bath to loosen hair follicles, and then placed into a machine that tumbles the carcasses to remove the hair. Following hair removal, the pork carcasses are usually gutted, split in half, and sent through a rapid chill. Carcasses are typically then further chilled 24 to 48 hours before the meat cutting and additional processing occurs.

---

[1] https://www.facebook.com/JBSUSALouisvilleKY/?ref=page_internal; https://jbsfoodsgroup.com/businesses/jbs-foods-usa#locations
[2] https://www.facebook.com/JBSUSALouisvilleKY/?ref=page_internal
[3] https://www.courier-journal.com/videos/tech/science/environment/2014/08/28/14755639/
[4] https://jbs.com.br/en/about/our-business/pork/
[5] *Id.*

17. Defendant's industrial processes at the Facility involve substantial pollutants, raw materials, and animal byproducts which are naturally highly odiferous.

18. Defendant's industrial process involves industrial quantities of dead animal carcasses and other used waste.

19. Defendant's business operations require storage and handling of substantial amounts of animal carcasses and other highly odiferous organic materials.

20. Defendant's industrial processes at the Facility produce highly noxious odors.

21. Defendant is required to maintain and implement adequate odor mitigation and emission control processes and technology to minimize environmental impacts and prevent noxious odors from invading the ambient air outside of the Facility.

22. The raw materials and chemicals utilized by Defendant are noxious and highly odiferous, and its processing operations create a foreseeable risk that noxious odor emissions could be emitted into surrounding residential communities if reasonable steps are not taken to mitigate and control them.

23. A properly operated, maintained, and/or constructed Facility such as Defendant's will not emit noxious odors into the surrounding residential areas.

24. Defendant is required to control its odorous emissions by, among other things, utilizing adequate odor mitigation and control technologies at the Facility; adequately operating and maintaining its odor mitigation and control technologies to prevent off-site odors; adequately storing and disposing of the organic waste utilized during and produced through its industrial processes, to prevent off-site odors; and other reasonable odor mitigation, elimination, and control systems available to Defendant.

25. Defendant has on occasions too numerous to list herein, emitted unreasonably noxious odors into the ambient air outside of the Facility.

26. The noxious odors and emissions caused by the Facility have been and continue to be dispersed across all public and private land in the Class Area.

27. Defendant's emission control processes are inadequate, improperly maintained and operated, and fail to prevent noxious offsite odors from invading nearby private, residential properties.

28. Defendant has failed to properly construct, operate, and maintain its Facility to prevent causing offensive offsite odor impacts, despite knowledge that its Facility has repeatedly emitted noxious fugitive emissions into the ambient air.

29. Defendant has failed to install, operate, maintain, and/or implement adequate odor mitigation and control strategies, processes, technologies, and/or equipment to control its odorous emissions from the Facility and prevent those odors and emissions from invading the homes and properties of Plaintiff and the putative Class.

30. Defendant's Facility is surrounded by residential properties.

31. On frequent, recurrent, and intermittent occasions too numerous to list individually, Plaintiff's property, including Plaintiff's neighborhood, residence, and outdoor spaces, have been and continue to be physically invaded by noxious odors.

32. The noxious odors that entered Plaintiff's property originated from, and were caused by, Defendant's Facility.

33. Defendant's Facility and its noxious emissions have been the subject of frequent complaints from residents in the nearby residential area.

34. Numerous area residents have reached out to Plaintiff's counsel detailing the impact that Defendant's odorous emissions have had on their lives and their ability to use and enjoy their homes and properties.

35. Plaintiff's property has been, and continues to be, invaded by noxious odors and emissions from Defendant's Facility.

36. Plaintiff Nicholas Vail reported to Plaintiff's Counsel that Defendant's Facility produces an odor that is an "unpleasant, harsh, & foul smell that is unbearable." As a result of Defendant's odors invading his property, Plaintiff Vail reported that "[w]hen the odor is present we do not go outside because it smells so terrible."

37. Below is a very small sampling of the factual allegations made by putative class members to Plaintiff's Counsel demonstrating that Defendant's facility is the source and cause of the odor and air pollutant emissions which have damaged their neighboring private residential properties within the Class Area:

   a. Putative class member Sandra Moon reported that the odors which invade her property from Defendant's Facility smell like "death" and a "[m]ixing of manure and rot." Ms. Moon further reported that as a result of Defendant's odors, "I cannot enjoy my patio & deck." Ms. Moon additionally stated that as a result of Defendant's invasive odors, "walking my dogs around the neighborhood is also miserable."

   b. Putative class member Vivian Hoke reported that the odors from Defendant's Facility smell "like squealing despair. Smells like warm blood and dirt." Ms. Hoke further reported that, "I am a runner and I often go to other neighborhoods to run if it smells too bad. We sometimes forgo a walk with our dog if it smells. We will eat inside instead of outdoor patio."

   c. Putative class member Barbara Cissel reported that the odors from Defendant's Facility are "worse than my cat box. Smells like rotten bacon or meat burning." Ms. Cissel further reported that as a result of Defendant's odors invading her property, she "cannot sit out on the front porch, or the backyard," "cannot have guests over for cookouts" and that it is "embarrassing for my family to invite other family members over."

38. Defendant's well documented pattern of failing to control its emissions, and similarly, its failure to install and maintain adequate technology to control its noxious odor emissions, is demonstrated by the following:

   a. Numerous Notices of Violation ("NOV") issued by the Louisville Metro Air Pollution Control District ("APCD") for violating the APCD's regulations, specifically the Prohibition of Objectionable Odors, which "prohibits objectionable odors from emitting beyond the facility's property line." These NOVs include, but are not limited to:

      i. On July 9, 2019, Defendant's Facility received an NOV after the APCD "received over 40 calls or messages concerning odor in the area near the Swift Pork Plant from April 11, 2019, to May 23, 2019." These community complaints included reports of odors like "dead pigs and pig feces," which were verified by APCD Compliance Officers who described the odors as "rendering and rancid grease (3 out of 4 on the odor scale)." The incident report further details hundreds of instances of Facility failures by Defendant, including over 30 specific failures to "record and monitor" numerous distinct odor control processes and equipment. The NOV further detailed how Defendant "failed to monitor air pollution control equipment and record and maintain data in a manner consistent with" its air permit.

      ii. On May 15, 2020, Defendant's Facility received an NOV and a civil penalty in the amount of $10,000 for its continued failure "to monitor air pollution control equipment and record and maintain data as required" by its air permit. The NOV details many of the same plantwide Facility failures pertaining to operation and maintenance of odor control procedures, methods, and equipment as the above-described July 9, 2019, NOV.

      iii. On September 20, 2021, Defendant's Facility received an NOV for a violation of APCD Regulation 1.13: *Control of Objectionable Odors in the Ambient Air*. The NOV details that the APCD received over 100 citizen odor complaints relating to Defendant's Facility from September 16, 2020, through April 2, 2021. These citizen complaints detail noxious "pig," "animal waste," and "rendering" odors verified by APCD Compliance Offers as "strong" odors at numerous locations throughout the putative class area. The NOV states that Defendant "failed to prevent objectionable odors from crossing its property line and being observed by various persons of the public, and subsequently identified and confirmed by LMAPCD Compliance Officers utilizing District-wide Odor Observation SOPs on:

- 1/15/2021
- 1/26/2021
- 1/27/2021
- 2/4/2021
- 3/10/2021 AM
- 3/10/21 PM
- 3/11/2021
- 3/18/2021."

b. The APCD has received hundreds of citizen odor complaints detailing Defendant's pervasive, noxious odors emanating outside the bounds of the Facility and into the surrounding putative class area. Many of these odor complaints are quickly verified by the APCD and attributed to being emanated from Defendant's Facility. A small sampling of these complaints include, but are not limited to:

   i. On August 5, 2020, at 6:57 PM, the LMAPCD received a Smell MyCity complaint regarding an odor of rotted meat along Rogers Street. The complainant also commented that, "I'm sitting out back trying to enjoy the weather."

   ii. On August 12, 2020, at 6:29 PM, the LMAPCD received a Smell MyCity complaint regarding an odor described as "JB Swift pork processing plant—very putrid, like sewage or rotting meat," along Baxter Avenue.

   iii. On August 28, 2020, the LMAPCD received numerous calls regarding odors of "pig," where LMAPCD verified strong objectionable odors in the surrounding community.

   iv. On September 5, 2020, the LMAPCD received several Smell MyCity complaints. The first was received at 9:23 AM regarding an odor described as, "JBS slaughterhouse," observed from the East Washington Street area. The second and third complaints were received at 1:46 PM, both observed on Story Avenue. One was an odor described as, "Swift." The other odor was described as, "burnt animal," with the additional comment that the complainant "can't enjoy their backyard." The final Smell MyCity complaint received on September 5 was received at 2:33 PM regarding an odor described as, "Swift," and, "nasty."

c. Numerous media reports depict and discuss Defendant's "unbearable" foul odors.

39. Defendant, its predecessors, and/or its agents either constructed or directed the construction of the facility and Defendant exercises control and ownership over the Facility.

40. Despite clear knowledge of its odor emission problem, Defendant repeatedly continued to frequently emit severe fugitive off-side noxious odors into the ambient air outside its property.

41. The foul odors emitted from the Facility are offensive, would be offensive to a reasonable person of ordinary health and sensibilities and have caused physical property damages.

42. Defendant's odors have caused substantial and unreasonable interferences with Plaintiff's use and enjoyment of private property.

43. Plaintiff's property has been and continues to be physically invaded by noxious odors that have interfered with the use and enjoyment of that property, resulting in damages.

44. The invasion of Plaintiff's property and that of the Class by noxious odors has deprived Plaintiff of the full value of his property and/or reduced the value of that property, resulting in damages.

45. The Class Area and Jefferson County are home to a wide range of commercial and recreational activities including but not limited to dining, industry, construction, retail trade, parks, and education.

46. Plaintiff and the Class are a limited subset of individuals in Jefferson County and the Class Area that includes only owner/occupants and renters of residential property who live within the Class Area and fit within the Class Definition. Plaintiff and the putative class are not coterminous with the general public.

47. Members of the public in the Class Area and Jefferson County, including but not limited to businesses, employees, commuters, tourists, visitors, minors, customers, clients, and students, have experienced and been harmed by the fugitive noxious odors emitted from the Facility into public spaces; however, unlike Plaintiff and the Class, members of the public who are

outside of the Class Definition have not suffered damages of the same kind, in the form of diminished private property values, deprivation of the full value of Plaintiff's private property, and/or loss of use and enjoyment of their private property.

48. Plaintiff and the Class have suffered damages different in kind that are not suffered by the public at large because their injury is an injury to private property.

49. The odors caused by Defendant's Facility have been and continue to be dispersed across public and private land throughout the Class Area.

50. Defendant negligently, knowingly, intentionally, and recklessly failed to properly design, operate, repair, and/or maintain the Facility and its associated operations, thereby causing the unreasonable invasion of Plaintiff's property by noxious odors on unusually severe, frequent, intermittent, and ongoing recurring occasions.

## CLASS ALLEGATIONS

### A. Definition of the Class

51. Plaintiff brings this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks to represent a Class of persons preliminarily defined as:

> ***All owner/occupants and renters of residential property residing within one (1) mile of the Facility's property boundary.***

The definitional boundary is subject to modification as discovery will disclose the location of all persons properly included in the Class ("Class Members"). Plaintiff reserves the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

52. This case is properly maintainable as a class action pursuant to and in accordance with Rule 23 of the Federal Rules of Civil Procedure in that:

    a.    The Class, which includes thousands of members, is so numerous that joinder of all members is impracticable;

    b.    There are substantial questions of law and fact common to the Class including those set forth in greater particularity herein;

    c.    Questions of law and fact such as those enumerated below, which are all common to the Class, predominate over any questions of law or fact affecting only individual members of the Class;

    d.    The claims of the representative parties are typical of the claims of the Class;

    e.    A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

    f.    The relief sought in this class action will effectively and efficiently provide relief to all members of the Class;

    g.    There are no unusual difficulties foreseen in the management of this class action; and

    h.    Plaintiff, whose claim is typical of those of the Class, through his experienced counsel, will zealously and adequately represent the Class.

### B. Numerosity

53.    The approximate number of residential households within the Class Area is over 3,500.

54.    The Class consists of thousands of members and therefore is so numerous that joinder is impracticable.

### C. Commonality

55.    Numerous common questions of law and fact predominate over any individual questions affecting Class Members, including, but not limited to the following:

    a.  whether and how Defendant negligently, knowingly, intentionally, recklessly, and grossly failed to design, operate, and maintain the Facility and its operations;

    b.  whether Defendant owed any duties to Plaintiff;

    c. which duties Defendant owed to Plaintiff;

    d. which steps Defendant has and has not taken in order to control the emission of noxious odors through the construction, design, operation, and maintenance of its Facility and its respective operations;

    e. whether Defendant met its standard of care with respect to its construction, operation, design, and maintenance of the Facility and its operations;

    f. whether and to what extent the Facility's noxious odors were dispersed over the Class Area;

    g. whether it was reasonably foreseeable that Defendant's failure to properly construct, design, operate, and maintain the Facility and its operations would result in an invasion of Plaintiff's property interests;

    h. whether the degree of harm suffered by Plaintiff and the Class constitutes a substantial annoyance or interference; and

    i. the proper measure of damages incurred by Plaintiff and the Class.

### D. Typicality

56. Plaintiff has the same interests in this matter as all the other members of the Class and his claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories and seek the same type of relief.

57. The claims of Plaintiff and the other Class Members have a common cause and their damages are of the same type. The damages of Plaintiffs and the Class are different in kind than those suffered by other members of the broader community who do not hold private residential property interests. The claims originate from the same failure of the Defendant to properly design, operate, and maintain the Facility and its operations.

58. All Class Members have suffered injury in fact as a result of the invasion of their property by Defendant's release of noxious odors causing damage to their property.

E. **Adequacy of Representation**

59. Plaintiff's claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class's claims will be prosecuted with diligence and care by Plaintiff as representative of the Class. Plaintiff will fairly and adequately represent the interests of the Class and does not have interests adverse to the Class.

60. Plaintiff has retained the services of counsel who are experienced in complex class action litigation and in particular class actions stemming from invasions of noxious industrial emissions. Plaintiff's Counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiff and all absent Class Members.

F. **Class Treatment Is the Superior Method of Adjudication**

61. A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

   a. Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

   b. Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

   c. The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and

   d. The proposed class action is manageable.

62. The prosecution of separate actions by or against individual members of the Class would create the risk of (i) inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for the party opposing the Class; and (ii) adjudications with respect to individual members of the Class

which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

63. Notice can be provided to members of the Class by U.S. Mail and/or publication.

### I.   CAUSE OF ACTION ONE

### PRIVATE NUISANCE

64. Plaintiff restates the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

65. Defendant owed and continues to owe a duty to Plaintiff and the Class, who are neighboring private property holders, to prevent and abate the interference with, and the invasion of, their private property interests.

66. The noxious odors, which entered Plaintiff's property originated from the Facility constructed, designed, maintained, and/or operated by Defendant.

67. The noxious odors invading Plaintiff's property are indecent and/or offensive to the senses, and obstruct the free use of their property so as to substantially and unreasonably interfere with the comfortable enjoyment of life and/or property, including in but not limited to the following ways:

   a. Causing Plaintiff and the Class to remain inside their homes and forego use of their yards, porches, and other outdoor spaces and refrain from outdoor activities;

   b. Causing Plaintiff and the Class to keep doors and windows closed when weather conditions otherwise would not require them to do so;

   c. Depriving Plaintiff and the Class of the full value of their homes and properties;

   d. Causing Plaintiff and the Class embarrassment, inconvenience, and reluctance to engage in outdoor activities and invite guests to their homes.

68.     The noxious odors produced by Defendant's Facility constitute a substantial and unreasonable invasion of Plaintiff's interests in the use and enjoyment of his property.

69.     Defendant's invasion of Plaintiff's property by noxious odors was intentional and/or negligent.

70.     As stated above, hundreds of putative class members have filed complaints regarding the offensive odors emitted by Defendant.

71.     Defendant is aware of the odors that emanate from its facility and has knowledge of the significant impacts the odors have on residents' lives yet has failed to abate or correct the conditions causing the nuisance odors.

72.     Plaintiff and the Class have suffered physical damage to property as a result of Defendant's nuisance odor emissions, including interference with use and enjoyment of property, deprivation of full value of property, diminution of property value, and embarrassment, annoyance, and inconvenience as alleged herein.

73.     Defendant's operations at the Facility are unreasonable, unwarranted, and unlawful.

74.     Defendant's use of Facility property has caused, and continues to cause, unreasonable and substantial annoyance to Plaintiff and the putative class on and at their neighboring properties, and similarly, unreasonably interferes with the use and enjoyment of such properties, and thereby has caused and continues to cause the fair market value of the claimant's property to be materially reduced.

75.     Whatever social utility provided by the Facility is clearly outweighed by the harm suffered by Plaintiff and the putative class, who have on unusually frequent occasions been deprived of the full use and enjoyment of their properties and have been forced to endure substantial loss in the use and value of their properties.

## II.  CAUSE OF ACTION TWO

## PUBLIC NUISANCE

76. Plaintiff restates the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

77. Plaintiff and the Class utilized their property as a residence and reside within the Class Area.

78. The noxious odors which entered Plaintiff's property originated from Defendant's facility.

79. Defendant's operation and/or maintenance of its facility is the proximate cause of the noxious odors that enter Plaintiffs' property.

80. The unreasonable odors caused by Defendant's facility have been and continue to be dispersed across public and private land throughout the Class Area.

81. By failing to reasonably design, operate, repair, and maintain its Facility, Defendant has caused an invasion of Plaintiff's property by noxious odors on unusually frequent occasions that are too numerous to individually list herein.

82. The noxious fumes and odors invading Plaintiff's property are indecent and offensive to Plaintiff and the Class, and indecent and offensive to individuals with ordinary sensibilities and obstruct the free use of Plaintiff's property so as to substantially and unreasonably interfere with the comfortable enjoyment of life and property.

83. A reasonable person would find Defendant's emission of noxious odors to be offensive and a nuisance.

84. Defendant knew that it was emitting noxious odors onto neighboring properties, yet it failed to take reasonably adequate steps to abate the nuisance.

85. Defendant owed and continues to owe a duty to Plaintiff and the Class to prevent and abate the interference with, and the invasion of, their private interests.

86. Defendant owed and continues to owe a duty to the public to prevent and abate the interference with, and the invasion of, the free use and enjoyment of public air and spaces by emitting noxious pollutants into the ambient air.

87. Defendant, by failing to reasonably repair, operate, and/or maintain its facility so as to abate nuisances such as malodorous emissions, has acted, and continues to act, intentionally, negligently, and with conscious disregard to public health, safety, peace, comfort, and convenience.

88. Defendant's operations at the Facility are unreasonable, unwarranted, and unlawful.

89. As a foreseeable, direct and proximate result of the foregoing conduct of Defendant, Plaintiff and the Class suffered damages to their property as alleged herein.

90. By causing noxious odors that physically invaded Plaintiff's property, Defendant created a nuisance which substantially and unreasonably impaired Plaintiff and the Class's use and enjoyment of their property on unusually frequent occasions too numerous to mention individually.

91. Such substantial and unreasonable interference includes, but is not limited to:

   a. loss of use and ability to enjoy the outside areas of Plaintiff's property or to open windows due to the presence of noxious odors;

   b. decrease in the value of Plaintiff and the Class's properties and depriving them of the full value of their properties; and

   c. annoyance, inconvenience, and discomfort, including but not limited to, inability to open windows when odors are present, inability to use outdoor spaces, and the inability to invite guests to Plaintiff's residence due to the embarrassment and annoyance of the noxious odors invade Plaintiff's property.

92. Apart from the private property damage incurred by Plaintiff and the Class, Defendant's emissions have substantially interfered with rights common to the general public, including the right to breathe uncontaminated and/or unpolluted air.

93. Plaintiff suffered and continues to suffer special harm to private property interests, including interference with the use and enjoyment of private land and private property, deprivation of full value of private property, and decreased property values. These damages are of a different kind and are additional to damages suffered by the public at-large exercising the same common right to breathe uncontaminated and unpolluted air.

94. Plaintiff did not consent to noxious odors entering upon his property.

95. Whatever social utility provided by the Facility is clearly outweighed by the harm suffered by Plaintiff and the putative class, who have on unusually frequent occasions been deprived of the full use and enjoyment of their properties and have been forced to endure substantial loss in the value of their properties.

96. Defendant's substantial and unreasonable interferences with Plaintiff's property rights constitutes a nuisance for which Defendant is liable to Plaintiff for all damages arising from such nuisance, including compensatory, injunctive, exemplary, and/or punitive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for judgment as follows:

A. Certification of the proposed Class pursuant to Federal Rule of Civil Procedure 23;

B. Designation of Plaintiff as representative of the proposed Class and designation of his counsel as Class Counsel;

C. Judgment in favor of Plaintiff and the Class Members and against Defendant;

D. An Order holding that entrance of the aforementioned noxious odors upon Plaintiff's property constituted a nuisance;

E. An Order holding that Defendant was negligent in its construction, design, operation, and maintenance of the Facility.

F. An award, to Plaintiff and the Class, of compensatory and punitive damages and attorneys' fees and costs, including pre-judgment and post-judgment interest thereupon;

G. An award to Plaintiff and the Class Members of injunctive relief not inconsistent with Defendant's state and federal regulatory obligations; and

H. Such further relief both general and specific as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues raised in this Complaint.

DATED: this 11th day of July 2022.

Respectfully submitted,

/s/ Matthew L. White
GRAY & WHITE
MATTHEW WHITE (88595)
Attorneys for Plaintiffs
2301 River Road, #300
Louisville, KY 40206
502-805-1800
www.grayandwhitelaw.com
mwhite@grayandwhitelaw.com

LIDDLE SHEETS COULSON P.C.
STEVEN D. LIDDLE (P45110)*
NICHOLAS A. COULSON (P78001)*
ALBERT J. ASCIUTTO (P82822)*

        Attorneys for Plaintiffs
        975 E. Jefferson Ave.
        Detroit, MI 48207
(313) 392-0015
(313) 392-0025 (fax)
SLiddle@lsccounsel.com
NCoulson@lsccounsel.com
AAsciutto@lsccounsel.com

\* *Pro Hac Vice* applications to be submitted.