UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

NICHOLAS VAIL,                                                                    Plaintiff,

v.                                                        Civil Action No. 3:22-cv-354-DJH-RSE

SWIFT PORK COMPANY,                                                       Defendant.

* * * * *

## MEMORANDUM AND ORDER

Plaintiff Nicholas Vail filed this purported class action against Defendant Swift Pork Company (SPC), seeking to represent a class of owners, occupants, and renters of residential property surrounding SPC's JBS Pork Production Facility (the Facility) and alleging temporary private nuisance, public nuisance, and negligent trespass under Kentucky law due to the Facility's "noxious odor emissions." (Docket No. 28, PageID.181–82, 185–92 ¶¶ 51, 64–106) SPC filed a motion to dismiss (D.N. 29), which the Court granted in part and denied in part.[1] (D.N. 35) In April 2025, the parties "reached an agreement in principle to resolve" the remaining claims.[2] (D.N. 97, PageID.1289) Vail now moves for preliminary approval of the proposed class-action settlement. (D.N. 108) SPC does not oppose the motion. (D.N. 108-1, PageID.1309 n.1) The Court heard oral argument on Vail's motion and took the matter under advisement. (*See* D.N. 111) After careful consideration, the Court will grant Vail's motion for the reasons set out below.

---

[1] The Court dismissed the public-nuisance and negligent-trespass claims but permitted the claim of temporary private nuisance to proceed. (*See* D.N. 35, PageID.265)

[2] Vail also moved for class certification (D.N. 72) and to strike the expert testimony of Dr. Mark Cal (D.N. 80). Although Vail states in his current memorandum that the Court "has not issued a ruling on either" motion (D.N. 108-1, PageID.1310 n.2), both were denied as moot following the parties' settlement (D.N. 106).

# I.

The following information is set out in Vail's memorandum in support of his motion, the proposed settlement agreement, and the associated exhibits. (*See generally* D.N. 108) Vail proposes a settlement class of "[a]ll owner/occupants and renters of residential property residing within one mile of the Facility's property boundary at any time from July 11, 2020, to the present." (*Id.*, PageID.1305; *see also* D.N. 108-2, PageID.1359) Vail estimates that there are approximately 3,745 households in the area defined by the proposed class. (D.N. 108-1, PageID.1316)

Under the proposed settlement, SPC will contribute $500,000 to a common settlement fund. (D.N. 108-2, PageID.1344) This amount will be distributed to eligible class members pro rata by household "after [the deduction of] any attorneys' fees, litigation expenses, and incentive award permitted by the Court." (*Id.*, PageID.1345) Additionally, SPC will purchase and install a new continuous hydrolyzer for the Facility within one year of the effective date of the agreement to reduce odor. (*Id.*, PageID.1348) The total proposed settlement value, equaling approximately $930,000, combines the settlement payment of $500,000 and the $430,000 estimated cost of the facility-improvement measures. (D.N. 108-2, PageID.1339) Class counsel will also seek approval of "a one-time lump sum payment or incentive award of no more than five thousand dollars ($5000) [to] be paid to [Vail] from the Settlement Fund." (*Id.*, PageID.1345) The proposed settlement provides for attorney fees of up to "one-third (1/3) of the total settlement value, along with reimbursement [to class counsel] of costs and expenses including settlement administration and notice fees" out of the settlement fund. (*Id.*, PageID.1340)

The proposed settlement also includes a release of claims for all "Swift Releasees."[3]  (D.N. 108-2, PageID.1350–52)  The release excludes claims for "medical harm or personal injuries" and claims "arising from emissions . . . occurring after the Effective Date [of the settlement agreement]."  (*Id.*, PageID.1351)  Finally, given the settlement agreement's proposed timeline for installation of the new hydrolyzer at the Facility, the agreement provides for a 36-month "Cooling-Off Period" during which "[a]ny claims that may accrue . . . are not released under [the] Settlement Agreement, but . . . may not be asserted until after the Cooling-Off Period Termination Date."  (*Id.*, PageID.1349–50)

If the proposed class is preliminarily approved, all "reasonably ascertainable residential addresses" in the settlement-class area will receive notice (D.N. 108-2, PageID.1366–70, 1378–80) via first-class U.S. mail with postage pre-paid.  (D.N. 108-1, PageID.1312; D.N. 108-2, PageID.1337)  A publication notice (D.N. 108-2, PageID.1382) will also be printed "in a newspaper of general circulation within the Settlement Class Area."[4]  (D.N. 108-1, PageID.1312; D.N. 108-2, PageID.1337)  Settlement funds will be distributed to class members via check.  (*See id.*, PageID.1345, 1378 ¶ 8)

---

[3] Under the proposed settlement agreement, "'Swift Releasees' shall mean and include Swift Pork Company, Swift's current, former, or future parents, subsidiary and affiliated corporations and other business entities, and all of their respective employees, contractors, officers, directors, investors, shareholders, members, partners, insurers, attorneys[,] and representatives."  (D.N. 108-2, PageID.1338–39)

[4] Class counsel will also create and maintain a settlement website providing relevant "settlement-related documents," such as the settlement agreement, claim form, class-area map, and preliminary approval order.  (D.N. 108-1, PageID.1312; D.N. 108-2, PageID.1354)  The website is to be referenced in both the longform notice and the publication notice.  (D.N. 108-1, PageID.1312; D.N. 108-2, PageID.1366–70; *id.*, PageID.1382)

## II.

"The claims of a 'class proposed to be certified for purposes of settlement' may be settled 'only with the court's approval.'" *Branson v. Alliance Coal, LLC*, No. 4:19-CV-155-RGJ-HBB, 2025 WL 1908971, at \*3 (W.D. Ky. July 10, 2025) (quoting Fed. R. Civ. P. 23(e)).  Under Rule 23(e), "class action settlement approval involves a three-step process: (1) preliminary approval of the proposed settlement, (2) notice of the settlement to all affected class members, and (3) a final approval hearing." *Branson*, 2025 WL 1908971, at \*3 (internal quotations omitted).  Final approval is warranted only when the Court finds that the proposed class settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  To preliminarily approve a settlement and direct notice, the Court must determine that it "will likely be able to" grant final approval and "certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B).

"The 'burden of proving the fairness of the settlement is on the proponents.'" *Carter v. Paschall Truck Lines, Inc.*, No. 5:18-CV-41-BJB, 2025 WL 899854, at \*2 (W.D. Ky. Mar. 25, 2025) (quoting *In re Dry Max Pampers Litig.*, 724 F.3d 713, 719 (6th Cir. 2013)).  In making a fairness determination, the Court considers two sets of substantially overlapping factors.  *See Macy*, 2019 WL 6684522, at \*2.  The first set of factors is outlined in Rule 23(e) and requires the Court to examine whether

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

4

Fed. R. Civ. P. 23(e)(2). The second set of factors to be considered was articulated by the Sixth Circuit and includes

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.[5]

*Macy*, 2019 WL 6684522, at *2 (quoting *Pelzer v. Vassalle*, 655 F. App'x 352, 359 (6th Cir. 2016)).

## A.    Adequate Representation

The Court first considers whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This factor weighs in favor of a proposed settlement where the class representative and counsel have "extensively litigated th[e] matter through settlement" and "engaged in a significant amount of discovery." *Green v. Platinum Rests. Mid-Am. LLC*, No. 3:14-CV-439, 2022 WL 1240432, at *3 (W.D. Ky. Apr. 27, 2022) ("There is no reason to think that[] if the case continued to trial, the parties would stop litigating the case with the same intensity."); *see also Lott v. Louisville Metro Gov't*, No. 3:19-CV-271-RGJ, 2023 WL 2562407, at *2 (W.D. Ky. Mar. 17, 2023) (finding adequate representation after considering parties' motion practice, written discovery, production of documents, briefing, depositions, settlement conferences, and successful mediation). And "[c]ourts presume [that] a settlement resulting from 'extensive negotiations by experienced counsel' is fair." *Carter*, 2025

---

[5] The Sixth Circuit has recently suggested, but not directly clarified, that analysis of these factors is no longer required after the most recent amendment to Rule 23(e)(2). *See Wayside Church v. Van Buren Cnty.*, No. 24-1598, 2025 WL 2829601 (6th Cir. Oct. 6, 2025) (affirming district court settlement approval under Rule 23 factors only). Thus, the Court will continue to consider both sets of factors.

WL 899854, at *3 (quoting *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 351 (N.D. Ohio 2001)).

Here, class counsel have substantial experience in the area of "class-action odor-nuisance" litigation.  (D.N. 108-1, PageID.1319 (quoting *Batties v. Waste Mgmt. of Pa., Inc.*, No. 14-7013, 2016 U.S. Dist. LEXIS 186335, at *47 (E.D. Pa. May 11, 2016)); *see also* D.N. 108-3, PageID.1389–90 ¶¶ 8, 12)  Indeed, class counsel assert that "extensive pre-suit investigations" were conducted prior to commencing the case, including obtaining and reviewing records from the Louisville Metro Air Pollution Control Department and surveying the residential neighborhoods around the Facility to compile resident experiences with dust and odor.  (D.N. 108-3, PageID.1390–91 ¶ 14; D.N. 108-1, PageID.1319)  Since filing this action, Vail and counsel have litigated a motion to dismiss (*see* D.N. 35) and a motion for class certification (D.N. 72) and engaged in discovery (*see, e.g.*, D.N. 56).[6]  Moreover, the settlement agreement is the result of extended negotiations after a failed mediation in June 2024.  (D.N. 108-1, PageID.1310)  Nothing suggests that the class representative and counsel "would stop litigating the case with the same intensity" if it were to proceed to trial.  *See Green*, 2022 WL 1240432, at *3.  Therefore, this factor weighs in favor of preliminary approval.  *Id.*; *see also Carter*, 2025 WL 899854, at *2.

## B.     Arm's-Length Negotiation

The Court next considers whether the proposed settlement "was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  As noted above, "[c]ourts presume [that] a settlement resulting from extensive negotiations by experienced counsel is fair."  *Carter*, 2025 WL 899854, at *3 (internal quotation omitted).  This case has been active since July 2022 (D.N. 1), and class

---

[6] Vail states that the parties have engaged in "substantial written discovery" and depositions, including depositions of the plaintiff, the defendant's corporate representative, and the respective experts of each party.  (D.N. 108-1, PageID.1310)

counsel have substantial experience in industrial-emission litigation (*see* D.N. 108-3, PageID.1389–90 ¶¶ 8, 12). The proposed settlement was reached several months after a failed day-long mediation with mediator Bill Baten, who is an "experienced and respected neutral." (*See* D.N. 108-1, PageID.1322) The parties continued to engage in settlement discussions for an extended period of months following the failed mediation (*id.*) and asked the Court to stay proceedings to accommodate their discussions (D.N. 93). Thus, this factor also supports preliminary approval of the settlement. *See Carter*, 2025 WL 899854, at *3; *see also Green*, 2022 WL 1240432, at *4 ("Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." (citations omitted)).

## C. Adequacy of Relief

The Court must also consider whether "the relief provided for the class is adequate." Fed. R. Civ. P. 23(e)(2)(C). Relevant factors include "the costs, risks, and delay of trial and appeal"; "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; "the terms of any proposed award of attorney's fees, including timing of payment"; and "any agreement required to be identified under Rule 23(e)(3)." *Id.*

The amended complaint does not allege injury to Vail or other residents of the area in a dollar amount, but rather "injury in fact as a result of the invasion of their property" and "physical damage to property . . . including interference with use and enjoyment of property, deprivation of full value of property, and diminution of property value."[7] (D.N. 28, PageID.184 ¶ 58, PageID.187

---

[7] Vail alleged that the aggregate amount in controversy exceeded $5,000,000 to support the exercise of jurisdiction pursuant to the Class Action Fairness Act; in the alternative, he alleged that damages exceeded $75,000 to support the exercise of diversity jurisdiction. (D.N. 28, PageID.172) Outside of these dollar amounts, however, Vail's amended complaint made no specific monetary estimate of damages. (*See id.*)

¶ 74)  Based on Vail's estimation that 3,745 households are in the proposed class area (D.N. 108-1, PageID.1316), the $500,000 gross settlement fund payment would provide approximately $133 per household in the class area.[8]  As previously discussed, however, several types of costs and fees will be subtracted from the gross settlement amount before it is distributed to class members, including attorney fees of up to one third of the total settlement value (*id.*, PageID.1340)—within the range regularly approved by courts in this district.  *See Green*, 2022 WL 1240432, at *3 (collecting cases); *see also Lott*, 2023 WL 2562407, at *3 (same); *McClurg v. Dallas Jones Enters., Inc.*, No. 4:20-CV-201-RGJ-HBB, 2025 WL 1908974, at *3 (W.D. Ky. July 10, 2025) ("[T]he negotiated fee for class counsel is up to one-third (1/3) of the Gross Settlement Amount, which is within an acceptable range.").  And SPC has also agreed to spend approximately $430,000 on improvements to the Facility, which will address future odor emissions.  (D.N. 108-2, PageID.1348)  Thus, the settlement addresses possible future emissions in addition to compensating class members for past injuries.

As noted by Vail (D.N. 108-1, PageID.1324; *see also* D.N. 108-3, PageID.1393), proceeding with the nuisance claims would involve expensive and scientifically complex testimony related to the Facility's emissions and the damages attributable to those emissions. "These risks respecting [odor nuisance] liability and damages are outweighed by the immediate benefits of settlement." *Batties*, 2016 U.S. Dist. LEXIS 186335, at *26.  SPC has also already successfully moved to dismiss two of Vail's three original claims in this case (*see* D.N. 35), which additionally suggests risk to Vail if litigation continues.  Further, the proposed settlement's

---

[8] This estimate does not account for the possibility of multiple individuals or families having moved in or out of each household during the class period.  (*See* D.N. 108-2, PageID.1336 (defining "simultaneous living" as a requirement for consideration as a single "household" under the settlement agreement))

"proposed method of distributing relief," Fed. R. Civ. P. 23(e)(2)(C), also appears to be effective given the straightforward language of the notification and claim form, general timeline, and the supporting staff that class counsel states will oversee the process (*see* D.N. 108-1, PageID.1312; D.N. 108-2, PageID.1337, 1366–70, 1378–80, 1382; D.N. 108-3, PageID.1390 ¶ 11). And there are no side agreements related to the proposed settlement. (D.N. 108-2, PageID.1353) Therefore, this factor also weighs in favor of preliminary approval.

**D.    Equitable Treatment**

The Court next asks whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). A proposed settlement "may, in some circumstances, be inequitable if it 'gives preferential treatment to the named plaintiff[].'" *Carter*, 2025 WL 899854, at *3 (quoting *Vassalle*, 708 F.3d at 755). Although "[s]ervice awards are not prohibited within the Sixth Circuit" when based on a "class representative['s] procured benefits, financial risks, and time expended," "sizable award[s] . . . might reflect inequitable or preferential treatment to the named representative's benefit." *McClurg*, 2025 WL 1908974, at *4 (internal quotations and citations omitted). The Court "should be most dubious of incentive payments when they make the class representative[] whole, or . . . even more than whole; for in that case the class representative[] ha[s] no reason to care whether the mechanisms available to unnamed class members can provide adequate relief." *Carter*, 2025 WL 899854, at *3 (quoting *In re Dry Max Pampers Litig.*, 724 F.3d at 722). The Court should thus consider "the extent of [the representative's] personal involvement in litigating th[e] case and the proportionality of the service award to other class members' recoveries." *McClurg*, 2025 WL 1908974, at *4 (citations omitted).

The proposed settlement agreement allows class counsel to seek up to $5,000 as an incentive award for Vail, "in addition to any distribution or payment he may receive by virtue of

his status as a Settlement Class Member." (D.N. 108-2, PageID.1345) As discussed above, each household in the class area will likely receive approximately $133 from the proposed settlement. Comparing the "proportionality of the service award to other class members' recoveries," *McClurg*, 2025 WL 1908974, at \*4 (citations omitted), thus indicates possible "preferential treatment to the named plaintiff[]," *see Carter*, 2025 WL 899854, at \*3. Vail's memorandum in support of preliminary approval states that he has "diligently represented the Class and . . . done everything required of him, including timely responding to discovery requests, sitting for a deposition, and attending mediation." (D.N. 108-1, PageID.1318) Though this factor will "merit more consideration at the final fairness [stage]," *McClurg*, 2025 WL 1908974, at \*4 (citing *Duffy v. Mazda Motor of Am., Inc.*, No. 3:24-CV-388-BJB, 2025 WL 517608, at \*3 (W.D. Ky. Feb. 17, 2025)), because the proposed settlement appears to "fall within the range of possible approval," this factor does not strongly weigh against preliminary approval,[9] *see Carter*, 2025 WL 899854, at \*3–4 (noting potential inequity of proposed case-contribution award but granting preliminary approval); *Duffy*, 2025 WL 517608, at \*3 (same); *McClurg*, 2025 WL 1908974, at \*4 (same).

**E.    Sixth Circuit Factors**

The Sixth Circuit factors likewise weigh in favor of preliminary approval. The parties represent that they have "engaged in intensive, arms-length negotiations through the mediation process" that resulted in the settlement agreement. (D.N. 108-2, PageID.1332) This representation, coupled with the lack of any evidence of fraud or collusion in the record, is sufficient to show minimal risk for the first Sixth Circuit factor. *See Green*, 2022 WL 1240432, at \*4 ("Courts presume the absence of fraud or collusion in class action settlements unless there is

---

[9] At the final-approval stage, Vail will need to provide "specific documentation—in the manner of attorney time sheets—of the time actually spent on the case." *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 311 (6th Cir. 2016).

evidence to the contrary." (citations omitted)); *see also Spine & Sports Chiropractic, Inc. v. Zirmed, Inc.*, No. 3:13-CV-00489, 2015 U.S. Dist. LEXIS 58020, at *4 (W.D. Ky. May 4, 2015) (noting that at the preliminary-approval stage, "the Court must take care not to intrude upon the private settlement negotiations of the parties any more than is necessary to determine that the agreement is not the result of fraud or collusion" (citation omitted)).  Regarding the second and third factors, this case has already been active for several years (*see* D.N. 1) and the parties have engaged in meaningful discovery related to class certification (D.N. 108-1, PageID.1310; *see also, e.g.*, D.N. 56).[10]

As to the second and fourth factors, proceeding without settlement would require the parties to litigate the complexities of the Facility's emissions and utilize costly experts.  (*See* D.N. 108-1, PageID.1324; D.N. 108-3, PageID.1393); s*ee also Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (affirming approval of class in an industrial-pollution case and stating as to this factor that "if [the] case had gone to trial, it most likely would have been a lengthy proceeding involving complex scientific proof").  Prior nuisance cases before the Court exemplify the common factual and evidentiary challenges that Vail would need to overcome to prevail in this litigation.  *See, e.g.*, *Dickens v. Oxy Vinyls, LP*, 631 F. Supp. 2d 859, 865–67 (W.D. Ky. 2009) (describing the particular evidence necessary at summary judgment to support an industrial odor-nuisance claim); *Cox v. Am. Synthetic Rubber Co.*, No. 3:06-CV-422-H, 2008 WL 5381909 (W.D. Ky. Dec. 18, 2008) (denying class certification for nuisance-odor claims); *Powell v. Tosh*, No. 5:09-CV-00121, 2013 WL 4418531 (W.D. Ky. Aug. 2, 2013)) (decertifying class given

---

[10] Even where "a considerable amount of additional discovery on liability, damages, and the appropriateness of certification would be necessary if the Court were to reject the proposed agreement," preliminary approval may be granted.  *See Ware v. CKF Enters., Inc.*, No. CV 5:19-183-DCR, 2020 WL 2441415, at *14 (E.D. Ky. May 12, 2020).

commonality-requirement concerns in the permanent-nuisance context). The probability of success on the merits "provides a gauge from which the benefits of the settlement must be measured." *Lewis v. Huntington Nat'l Bank*, No. 2:11-cv-00058, 2013 WL 12231327, at *3 (S.D. Ohio May 30, 2023) (internal quotation omitted). Given the risks discussed above, Vail's probability of success on the merits also weighs in favor of preliminary approval. (*See also* D.N. 108-3, PageID.1394 (acknowledging "risks, costs, and delays associated with continued litigation, and the very real possibility of obtaining no recovery at all for Plaintiff and the Class")

As to the fifth factor, class counsel and Vail support the proposed settlement. (*See generally* D.N. 108-2) Regarding public interest, "courts have recognized a strong public interest in favor of settlements, particularly in class action suits." *Donaway v. Rohm & Haas Co.*, No. 3:06-CV-575-H, 2009 U.S. Dist. LEXIS 56574, at *12 (W.D. Ky. July 1, 2009); *see also Olden*, 294 F. App'x at 219 (affirming approval of settlement agreement despite the fact that it did "not entirely comport with the public interest since it [did] not address the most significant environmental hazards created by [an industrial] plant"). Finally, "[t]he 'reaction of absent class members' is not relevant to the preliminary approval stage analysis." *Ware*, 2020 WL 2441415, at n.4; *see also Duffy*, 2025 WL 517608, at *4. Thus, the Sixth Circuit factors predominantly support preliminary approval.

## F.     Preliminary Class Certification for Settlement Purposes

The Court must certify the class for settlement purposes before notice is sent to class members. *See* Fed. R. Civ. P. 23(e)(1)(B) (requiring courts to direct notice where "justified by the parties' showing that the court will likely be able to . . . certify the class for purposes of judgment on the proposal"); *In re Flint Water Cases*, 499 F. Supp. 3d 399, 418 (E.D. Mich. 2021). "Though still subject to the Court's final approval at a later date, preliminary certification indicates at this

stage that certification is sufficiently 'likely' to justify sending notice to settlement class members." *Id.* Ultimately, "[t]o be certified, a class must satisfy all four of the Rule 23(a) prerequisites—numerosity, commonality, typicality, and adequate representation—and fall within one of the three types of class actions listed in Rule 23(b)." *Branson*, 2025 WL 1908971, at *5 (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012)). But "at th[e] preliminary stage, rigorous analysis under Rule 23(a)–(b) is not necessary." *Id.* (citation omitted).

### 1.    Rule 23(a) Requirements

The Rule 23(a) requirements are likely satisfied here. "There is no strict numerical test" for numerosity, *see id.* (quoting *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)), but when the proposed class "includes thousands of individuals," the numerosity requirement is "usually" satisfied. *See Daffin*, 458 F.3d at 552. Although the proposed class is not measured in individuals, Vail estimates that the class area covers 3,745 households. (D.N. 108-1, PageID.1316) This number is sufficient to satisfy the numerosity requirement. *See Willard v. Aliera Cos.*, No. 5:20-CV-00496-JMH, 2021 U.S. Dist. LEXIS 219992, at *7 (E.D. Ky. Nov. 8, 2021) (finding that a proposed class of "378 unique households" met the numerosity requirement).

Commonality exists where there is a "common contention that, if resolved, would resolve claims of all class members in one stroke." *Branson*, 2025 WL 1908971, at *5 (internal quotations omitted). As Vail notes, this action involves several issues common to all class members, including

> (1) whether and to what extent the Facility's . . . emissions were dispersed throughout the Class Area; (2) whether Defendant's operation of the Facility was reasonable; (3) whether  . . . odors emitted from the Facility were unreasonable to an ordinary person of normal health and sensibilities; (4) whether the degree of harm suffered by the Plaintiff and the Class constitutes an unreasonable annoyance or interference; and (5) the proper measure of damages incurred by Plaintiff and the Class.

(D.N. 108-1, PageID.1316–17)  The commonality requirement is thus likely satisfied here.[11]  *See Branson*, 2025 WL 1908971, at *5.

The typicality requirement asks whether the class representative's claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members, and if [their] claims are based on the same legal theory."  *Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153, 2021 WL 757123, at *11 (S.D. Ohio Feb. 18, 2021) (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007)).  Typicality "'tends to merge' with the commonality requirement."  *Id.* (quoting *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982)).  Thus, the typicality requirement is likely satisfied here since Vail's claim arises from the same Facility emissions and is based on the same legal theory as the claims of other class members.

Lastly, "[t]here are two criteria for determining whether the representation of the class will be adequate: 1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representative[] will vigorously prosecute the interests of the class through qualified counsel."  *Branson*, 2025 WL 1908971, at *5 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524–25 (6th Cir. 1976)).  As discussed above, Vail and class counsel appear to have adequately represented the class in this case, *see Branson*, 2025 WL 1908971, at *5, and Vail's own property is within the class area (*see* D.N. 1, PageID.1 ¶ 1, PageID.6 ¶¶ 35–37; D.N. 108-2, PageID.1359).  Thus, the Rule 23(a) requirements are likely satisfied here.  *See generally Bell v. DuPont Dow Elastomers, LLC*, 640 F. Supp. 2d 890, 894–95 (W.D. Ky. 2009)

---

[11] Where those in the settlement class "have agreed upon the level of the nuisance experienced, the Court has a much easier time finding commonality for purposes of the settlement."  *Dickens v. Zeon G.P. LLC*, No. 3:06-CV-363-H, 2011 WL 4054357 (W.D. Ky. Sept. 12, 2011) (final-approval stage).

(finding proposed class meets Rule 23(a) requirements in emission nuisance case); *Donaway*, 2009 WL 1917083, at *2–3 (same); *Dickens v. Zeon G.P. LLC*, No. 3:06-CV-363-H, 2011 WL 4054357, at *2–3 (W.D. Ky. Sept. 12, 2011) (same).

### 1.      Rule 23(b) Requirements

Vail has also sufficiently demonstrated that the proposed class "fall[s] within one of the three types of class actions listed in Rule 23(b)." *See Branson*, 2025 WL 1908971, at *5.  Vail argues that the class may be preliminarily certified under Rule 23(b)(3).   (D.N. 108-1, PageID.1319)  "[U]nder Rule 23(b)(3), the Court must find that 'questions common to the class predominate over questions affecting only individual members,' and that a class action is a superior way to resolve the controversy." *Duffy*, 2025 WL 517608, at *4 (citing *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 535 (6th Cir. 2008)).  "Common issues predominate in air pollution cases when the paramount issue concerns whether a plant's emissions . . . substantially interfer[e] with the local residents' use and enjoyment of their real and personal property." *Batties*, 2016 U.S. Dist. LEXIS 186335, at *13–14 (quoting *Stanley v. U.S. Steel Co.*, No. 04-74654, 2006 U.S. Dist. LEXIS 16582, at *6–7 (E.D. Mich. Mar. 17, 2006)).  Such claims are asserted here by Vail.  (*See generally* D.N. 28)  The superiority requirement seeks "economies of time, effort, and expense and promote[s] . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).  Because "[t]he alternative is the litigation of hundreds (or thousands) of individual claims" in this case and such an alternative would "unfortunately exclud[e] the claims of certain Class Area residents for whom individual litigation is not feasible," the superiority requirement is likely met.  *See Batties*, 2016 U.S. Dist. LEXIS 186335, at *15–16 (citation omitted).  Thus, certification under Rule 23(b)(3) is likely.  *See generally Bell*, 640 F. Supp. 2d 890, 895 (W.D. Ky. 2009) (finding proposed class

meets Rule 23(b)(3) requirements in emission nuisance case); *Donaway*, 2009 WL 1917083, at *3 (same); *Dickens*, 2011 WL 4054357, at *2 (same).

G.     **Adequacy of the Proposed Notice**

Pursuant to Rule 23(e), the Court must direct notice of the proposed settlement "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).  Rule 23(b)(3) class actions require "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  Rule 23 requires that notice to the class clearly and concisely state

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The notice proposed by the parties here meets these requirements.  It explains the nature of the lawsuit and its claims, defines the settlement class, advises that class members may hire their own attorneys, explains how to request exclusion from the class, describes the binding effect of an approved settlement, and summarizes the terms of the proposed settlement.  (*See* D.N. 108-2, PageID.1366–70, 1382)  The proposed notice will be sent via first-class U.S. mail to all addresses within the class area and will also be distributed by newsprint.  (D.N. 108-2, PageID.1337; D.N. 108-1, PageID.1312, 1354)  Such notice is satisfactory under Rule 23.[12]  *See* Fed. R. Civ. P.

---

[12] Notwithstanding the notice's statement that class members "cannot exclude [themselves] on the phone or by email . . ." (D.N. 108-2, PageID.1369), class counsel indicated at the preliminary

23(c)(2)(B) (explaining that "[t]he notice may be by one or more of the following: United States mail, electronic means, or other appropriate means").

**III.**

For the reasons set out above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     Vail's unopposed motion for preliminary settlement approval (D.N. 108) is **GRANTED**.  The Court preliminarily **APPROVES** the parties' settlement agreement.  This approval is subject to further consideration at a final approval hearing, following proper notice to the members of the settlement class of the opportunity to object to its terms.

(2)     Pursuant to Federal Rule of Civil Procedure 23(e), the Court preliminarily **CERTIFIES** the following class for settlement purposes: "All owner/occupants and renters of residential property residing within one (1) mile of the Facility's property boundary at any time from July 11, 2020, to the present."  (*See* D.N. 108-2, PageID.1334)

(3)     The Court preliminarily **APPOINTS** Plaintiff Nicholas Vail as Class Representative for the Settlement Class.

(4)     The Court preliminarily **APPOINTS** Liddle Sheets Coulson, P.C. and Gray & White as Class Counsel for the Settlement Class.

(5)     The Court **APPROVES** the notice and notice method described in the settlement agreement.  Notice shall proceed in accordance with the procedures and methodologies described therein.

---

fairness hearing that any individual responding to the settlement notice by email or phone will be assisted in opting out.

(6)    This matter is **SET** for a final fairness hearing on **February 11, 2026, at 10:00 a.m.** at the U.S. Courthouse in Louisville, Kentucky.

(7)    Members of the settlement class who wish to object to the proposed settlement agreement must submit a written statement of objection that comports with the procedures outlined in the settlement agreement.  Any objections must be filed at least **twenty-one (21) days prior to the final fairness hearing**.  Any responses to objections must be filed at least **seven (7) days prior to the final fairness hearing**.  There shall be **no replies**.

(8)    Any motions for attorney fees, expenses, and class-representative service awards **SHALL** be filed at least **thirty (30) days prior to the final fairness hearing**.  In addition, any briefs or other documentation in support of final approval must be filed at least **fourteen (14) days prior to the final approval hearing**.

December 9, 2025

**David J. Hale, Chief Judge**
**United States District Court**