UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

NICHOLAS VAIL,                                                                    Plaintiff,

v.                                                          Civil Action No. 3:22-cv-354-DJH-RSE

SWIFT PORK COMPANY,                                                          Defendant.

* * * * *

**MEMORANDUM OPINION AND ORDER**

On December 9, 2025, the Court preliminarily approved the class-action settlement in this matter. (Docket No. 115)  In the same Memorandum and Order, the Court conditionally certified the class for settlement purposes; appointed class counsel; and approved the notice and opt-out form to be sent to class members. (*Id.*)  Plaintiff Nicholas Vail now moves for final approval of the settlement and certification of the class for settlement purposes, as well as final approval of attorney fees and a service award to Vail. (D.N. 123; D.N. 125)  Defendant Swift Pork Company does not oppose the motions (*id.*), and no class member timely objected to the settlement.[1]  The Court held a final fairness hearing on May 14, 2026, and heard from the parties in support of the settlement. (D.N. 129)  After careful consideration, the Court will grant Vail's motions for final approval.

**I.**

This case involves claims against SPC of private nuisance, public nuisance, and negligent trespass under Kentucky law arising from the JBS Pork Production Facility's alleged "noxious[-]odor emissions." (D.N. 28, PageID.181–82, 185–92 ¶¶ 51, 64–106)  SPC filed a motion to dismiss

---

[1] There was a single late-filed objection to the settlement, which is addressed below. (*See* D.N. 128, PageID.1618; D.N. 128-2)

1

(D.N. 29), and the Court then dismissed the public-nuisance and negligent-trespass claims but permitted the claim of temporary private nuisance to proceed.[2]  (*See* D.N. 35, PageID.265)  In April 2025, the parties "reached an agreement in principle to resolve" the remaining claims.  (D.N. 97, PageID.1289)  In its December 9 Memorandum and Order, the Court conditionally certified the following class for settlement purposes: "All owner/occupants and renters of residential property residing within one (1) mile of the Facility's property boundary at any time from July 11, 2020, to the present."  (D.N. 115, PageID.1432)

The proposed final settlement amount is $930,000.  (*See* D.N. 123-1, PageID.1466, 1471) This sum includes per-household payments to class members who did not opt out of the settlement; attorney fees and costs, including costs for administration of the settlement; and a service award to Vail as the class representative.  (*Id.*, PageID.1472)  Additionally, this figure includes the agreed estimate of the $430,000 cost to SPC to purchase and install a new continuous hydrolyzer at the Facility with the aim of reducing odor.[3]  (*Id.*, PageID.1475)  Class members who did not timely request exclusion from the class will release SPC and related entities from claims arising from the alleged conduct at issue in this action.  (*Id.*, PageID.1477–79)  The release excludes claims for "medical harm or personal injuries" and claims "arising from emissions . . . occurring after the Effective Date [of the settlement agreement]."  (*Id.*, PageID.1478)  The agreement also provides for a 36-month "Cooling-Off Period" during which "[a]ny claims that may accrue . . . are not released under [the] Settlement Agreement, but . . . may not be asserted until after the Cooling-Off Period Termination Date."  (*Id.*, PageID.1476–77)

---

[2] Vail also moved for class certification (D.N. 72) and to strike the expert testimony of Dr. Mark Cal (D.N. 80).  Although Vail states that the Court "has not issued a ruling on either" motion (D.N. 125, PageID.1520 n.1), both were denied as moot following the parties' settlement (D.N. 106).
[3] Defense counsel stated at the final fairness hearing that SPC has already purchased and installed the new continuous hydrolyzer at the Facility.

On December 23, 2025, the class notice previously approved by the Court was disseminated to "all available residential addresses within the Class Area," which totaled 4,497 households. (D.N. 125, PageID.1522; *see* D.N. 125-2, PageID.1575 ¶ 28; D.N. 125-4, PageID.1589 ¶ 6) Based on class counsel's updates at the final fairness hearing on May 14, 2026, there are 593 approved claims and four class member opt-outs. (*See also* D.N. 125, PageID.1522; D.N. 125-2, PageID.1576 ¶ 30–33; D.N. 128, PageID.1617)

On February 2, 2026, class counsel received a letter from class member Ian Muldion generally objecting to the size of the settlement fund. (*See* D.N. 128, PageID.1618; D.N. 128-2 ("I think $500,000 is not nearly enough for local residents.")) The letter was postmarked January 27, 2026. (D.N. 128-2, PageID.1635) Because the deadline to submit objections was January 22, 2026 (*see, e.g.*, D.N. 125-4, PageID.1598 (notice to class members)), the objection was untimely. And "courts need not consider untimely objections." *Duffy v. Mazda Motor of Am., Inc.*, No. 3:24-CV-388-BJB, 2026 WL 1694529, at *1 (W.D. Ky. June 11, 2026) (quotation omitted). Even if the Court were to consider the merits of the objection, the single objection would not prevent final approval of the settlement. *See Dick v. Sprint Commc'ns Co. LP*, 297 F.R.D. 283, 297 (W.D. Ky. 2014) ("A certain number of objections are to be expected in a class action. If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (citation omitted); *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1001 (N.D. Ohio 2016) ("The possibility that the settlement could have been better does not mean the settlement presented was not fair, reasonable or adequate.") (citation modified). Muldion did not appear at the final fairness hearing.

**II.**

**A.      Approval of Settlement**

Pursuant to Federal Rule of Civil Procedure 23, the Court may approve a class-action settlement

> only after a hearing and only on finding that [the settlement] is fair, reasonable, and adequate after considering whether:
> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  The rule largely encompasses the factors employed by the Sixth Circuit:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Does 1-2 v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 894–95 (6th Cir. 2019) (quoting *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).  In addition to the seven factors listed above, the Sixth Circuit "look[s] to whether the settlement 'gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members.'" *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013) (quoting *Williams v. Vukovich*, 720 F.2d 909, 925 n.11 (6th Cir. 1983)).  The Court considers both sets of factors below.  *See Feezle v. Norfolk S. Ry. Co. (In re E. Palestine Train Derailment)*, 158 F.4th 704, 713 (6th Cir. 2025).

4

1.     **Adequate Representation, Discovery, and Counsel and Representative's Opinions**

This case has been litigated since July 2022. (*See* D.N. 1) Nothing in the record indicates that the class representative and counsel have failed to adequately represent the proposed class, and class counsel has substantial experience in class-action litigation related to odor nuisance (D.N. 125-2, PageID.1565–70 ¶¶ 5–8). *See Batties v. Waste Mgmt. of Pa., Inc.*, No. 14-7013, 2016 U.S. Dist. LEXIS 186335, at *47 (E.D. Pa. May 11, 2016) (noting counsel's experience in similar class action). As the Court explained in its preliminary-approval order, class counsel represents that "extensive pre-suit investigations" were conducted prior to commencing the case. (D.N. 125, PageID.1530; *see* D.N. 125-2, PageID.1571 ¶ 14) Vail and counsel have also engaged in substantial motion practice (*see, e.g.*, D.N. 35) and initial discovery (*see, e.g.*, D.N. 56).[4] These factors and the opinions of counsel and the class representative, both of whom favor the settlement, therefore support final approval. *See Does*, 925 F.3d at 899.

2.     **Arm's-Length Negotiation and Risk of Fraud or Collusion**

Absent evidence of fraud or collusion, courts generally approve settlements reached after informed negotiations between experienced counsel. *See Dick*, 297 F.R.D. at 295 ("Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." (quoting *Leonhardt v. Arvin Meritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008)). No evidence of fraud or collusion is present in this case. Class counsel possesses substantial experience in class-action litigation (D.N. 125-2, PageID.1565–70 ¶¶ 5–8) and undertook initial discovery to evaluate the claims at issue (*see id.*, PageID.1571 ¶¶ 12, 15). Further, although the final settlement agreement was not reached during mediation, the parties had

---

[4] This discovery included "substantial written discovery" and depositions, including depositions of the plaintiff, the defendant's corporate representative, and the respective experts of each party. (D.N. 125, PageID.1519)

5

previously participated in a day-long mediation with an experienced and respected third party. (*Id.* ¶¶ 11–12)  Vail states that the settlement was achieved through arm's length and adversarial settlement negotiations.  (*See* D.N. 125-2, PageID.1571; *see also* D.N. 125, PageID.1529)  In sum, these factors also weigh in favor of final approval.

###   3.   Adequacy of Relief

The settlement agreement's 36-month "Cooling-Off Period" following the Court's final approval, during which time "[a]ny claims that may accrue . . . are not released . . . but . . . may not be asserted [in litigation]" (D.N. 123-1, PageID.1476–77), could feasibly result in such claims being time-barred.  The parties' settlement agreement and motion for final approval are silent on this potential impact, stating only that the provision "is designed to allow adequate time for [SPC] to order, install, and calibrate the new hydrolyzer as well as obtain any necessary permits or permit modifications for its installation."  (D.N. 125, PageID.1521; *see generally* D.N. 123-1)  But even if the provision will, in effect, bar future claims regarding odorous emissions from SPC's facility that accrue during the cooling-off period, courts most commonly disapprove of the scope of release provisions where they extend to claims with a different "factual predicate" than that at issue in the class action.  *See, e.g.*, *Does*, 925 F.3d at 900 (applying factual-predicate test).  And after finding that there is "no limit on the language allowing for release of claims other than that [the claims] must be based on an identical factual predicate," at least one court in the Second Circuit has approved a provision releasing claims accruing after final approval of the settlement.  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720-MKB-JO, 2019 WL 6875472, at *23–25 (E.D.N.Y. Dec. 16, 2019) (citation modified) (approving settlement agreement provision that released claims accruing in the five years following the final settlement date), *judgment entered*, No. 05-MD-1720 (MKB), 2022 WL 2803352 (E.D.N.Y. July 18, 2022),

6

*aff'd sub nom. Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704 (2d Cir. 2023). The Sixth Circuit has affirmed approval of release provisions regarding future claims in an industrial emissions case, albeit after examination of a more complex release provision. *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 350 (6th Cir. 2009). Because the Sixth Circuit, like the Second Circuit, appears to limit release provisions only by the factual-predicate test, the Court thus finds that the "Cooling-Off" provision of the settlement agreement does not bar a Rule 23 finding that the agreement is fair, reasonable, and adequate. *See id.*; *see also In re Payment Card*, 2019 WL 6875472, at *23–25.

      a.    **Costs, Risks, and Delay of Trial and Appeal/Complexity, Expense, and Likely Duration of the Litigation/Likelihood of Success on the Merits**

The parties have already invested significant time and money in this litigation. (*See, e.g.*, D.N. 123-2, PageID.1498 ¶ 28; *id.*, PageID.1500 ¶ 39) Proceeding to trial would entail further risk and expense, with the outcome uncertain. The Court has dismissed two of Vail's three original claims in this case. (*See* D.N. 35) As Vail acknowledges (*see* D.N. 125, PageID.1526) and the Court previously discussed in its preliminary-approval Order (*see* D.N. 115, PageID.1426), proceeding with the nuisance claims would involve expensive and scientifically complex testimony related to the Facility's emissions and the damages attributable to those emissions. (*See id.* (noting that even if Vail successfully moved for class certification, "which itself carries significant risks, he would then need to affirmatively establish that Defendant's alleged odor emissions were spread throughout the proposed Class Area and were of such frequency, intensity, and duration as to constitute a temporary private nuisance."); D.N. 125-2, PageID.1573–74 ¶¶ 19–22) "These risks respecting [odor nuisance] liability and damages are outweighed by the immediate benefits of settlement." *Batties*, 2016 U.S. Dist. LEXIS 186335, at *26. Thus, "in considering the likelihood of success on the merits against the broad relief offered by the

7

settlement," this factor supports settlement. *Walls v. JPMorgan Chase Bank, N.A.*, No. 3:11-CV-673-DJH, 2016 WL 6078297, at *3–4 (W.D. Ky. Oct. 14, 2016).

### b. Method of Distribution

"[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 *Newberg and Rubenstein on Class Actions* § 13:53 (6th ed. 2026). "[M]erely requiring potential claimants to fill out a form in order to collect from the settlement fund is not considered cumbersome." *Id.* Here, SPC has spent approximately $430,000 on improvements to the Facility, which are intended to reduce future emissions without any required action by class members. (D.N. 123-1, PageID.1475; *see also* D.N. 125, PageID.1527 ("Identifying with particularity the extent to which the usable value of any particular property varies from another would require a combination of emissions modeling and specialized appraisal that would be sufficiently costly as to reduce the Class's aggregate recovery beyond its limited benefit to any individual Class Member.")) And payments from the common fund will be distributed pro rata per household for class members that submitted a claim form with documentation showing their residency within the class area. (*See* D.N. 108-2, PageID.1377–80 (claim form); D.N. 123-1, PageID.1474) In short, there are no "red flag[s]" suggesting that the method of distribution is designed to prevent class members from receiving payment, 4 *Newberg and Rubenstein on Class Actions* § 13:53 (6th ed. 2026), and this factor likewise favors final approval.

### c. Attorney Fees

Vail moves for approval of $150,000 in attorney fees, or thirty percent of the initial settlement common fund, as well as litigation costs of $45,000. (*See* D.N. 123, PageID.1441; *see also* D.N. 123-1 (terms of proposed settlement agreement)) The Sixth Circuit recognizes two

8

methods for calculating attorney fees: the lodestar method and the percentage-of-the-fund method. *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016). The Court "ha[s] the discretion to select the particular method of calculation but must articulate the 'reasons for adopting a particular methodology and the factors considered in arriving at the fee.'" *Id.* at 280 (internal quotations omitted) (quoting *Moulton*, 581 F.3d at 352). The percentage method is generally preferred in common-fund cases. *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 789 (N.D. Ohio 2010) (citing *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). Here, "Class Counsel is not requesting any attorneys' fees for the value of the Improvement Measures."[5] (D.N. 123, PageID.1447) Because class counsel does not request fees in relation to the non-common-fund portion of the class benefit, the Court will apply the percentage-of-the-fund method.

The Sixth Circuit has identified six factors relevant to the attorney-fee inquiry under either method of calculation:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Gascho*, 822 F.3d at 279 (quoting *Moulton*, 581 F.3d at 352). These factors support approval of class counsel's requested fee here. First, the estimated average settlement benefit is around $505 per household plus the added value of the facility-improvement measures, which also benefits the

---

[5] Although the Court uses the more conservative value based on class counsel's argument, if the Court were to consider the requested attorney fees as a percentage of the estimated total settlement value, the proposed fee would only be about sixteen percent of the total settlement value. *See Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 279–87 (6th Cir. 2016) (discussing circuit split on determining the value of the benefit provided to the class for purposes of attorney-fee awards).

local public at large.[6]  Further, class counsel have extensive experience in this type of litigation and provided their services on a contingent basis. (D.N. 123-2, PageID.1500 ¶ 42; D.N. 125-2, PageID.1565–70 ¶¶ 5–8)  Odor nuisance is a specialized area of the law, and society has an interest in "[e]ncouraging qualified counsel to bring inherently difficult and risky but beneficial class actions."  *In re Skechers Toning Shoe Prods. Liab. Litig.*, No. 3:11-MD-2308-TBR, 2013 WL 2010702, at *9 (W.D. Ky. May 13, 2013) (quotation omitted).

Finally, the percentage sought is not unreasonable.  The proposed fee award in this case represents thirty percent of the settlement common-fund amount.  (*See* D.N. 123, PageID.1446–47)  While the particular type of emissions litigation is somewhat uncommon, no class members objected to the requested fee award, and courts within the Sixth Circuit frequently approve fee awards of around thirty percent in complex cases.  *See, e.g.*, *Lott v. Louisville Metro Gov't*, No. 3:19-CV-271-RGJ, 2023 WL 2562407, at *3–4 (W.D. Ky. Mar. 17, 2023) (collecting cases).  In light of this precedent and the factors listed above, the proposed fee award is reasonable.[7]

### d.    Other Agreements

The proposed final agreement states that the "Settlement Agreement constitutes the entire agreement among the Parties, and no representations, warranties, or inducements other than those

---

[6] This estimate was calculated by subtracting the proposed attorney fees ($150,000), litigation costs ($45,000), and service award ($5,000) from the settlement fund ($500,000) and dividing that number by the approved claims (593).

[7] Based on the declaration submitted by lead settlement administrator Katie Ouellette, Liddle Sheets P.C. also appears to have performed its claim-administrator duties in accordance with the settlement agreement and the Court's prior order.  (*See generally* D.N. 123-1; D.N. 125-4)  At the time Vail filed the motion for approval of fees and the service award, class counsel had spent $40,788.45 in out-of-pocket litigation expenses.  (D.N. 123-2, PageID.1497; *see also id.*, PageID.1503 (breakdown of case costs))  During the final fairness hearing, class counsel indicated that litigation expenses are unlikely to reach the requested $45,000.  For this reason, the Court will approve reimbursement of litigation costs up to $45,000.

set forth herein have been made to any Party concerning [the] Settlement Agreement." (D.N. 123-1, PageID.1480)  Thus, this factor favors final approval.

### 4.   Equitable Treatment of Class Members

The settlement agreement provides for a $5,000 service award to Vail.  (D.N. 123-1, PageID.1472)  Such payments generally "do[] not raise a red flag" in the settlement-approval inquiry "because the class representative and class member are not similarly situated in regard to . . . the [service award]: the class representative did extra work and took extra risk to earn that." 4 *Newberg and Rubenstein on Class Actions* § 13:56 (6th ed. 2026).  Requests for service awards are nevertheless "scrutinized carefully" in light of the concern that such payments "may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (citing *Newberg on Class Actions* § 11.38 (3d ed. 1992)).

"[C]onsiderable time" spent by a plaintiff in protecting the class's interests can justify a heightened service award if such efforts are "supported by . . . [documentation that] quantif[ies the plaintiff's] invested time."  *Moeller v. Week Pubs., Inc.*, 646 F. Supp. 3d 923, 927 (E.D. Mich. 2022).  Class counsel attests that since 2022, Vail has participated and provided support in ways such as "sitting for a deposition and attending mediation" between the parties.[8]  (D.N. 123-2, PageID.1501)  Class counsel further reports that in addition to retaining counsel with experience in industrial-emissions litigation and initiating the case "on behalf of the Louisville community," Vail has been "highly responsive to all requests for information by counsel and has done everything asked of him to help." (D.N. 123, PageID.1454)  In light of counsel's representations

---

[8] During the final fairness hearing, class counsel confirmed that both the deposition and the mediation involved substantial preparation with Vail and each lasted a full day.

regarding Vail's contributions, this factor favors final approval.[9]  *See Kimble v. Am. Home Warranty Corp.*, No. 23-10037, 2024 WL 3325705, at *4 (E.D. Mich. July 8, 2024) (approving service award based on counsel's representations that the named plaintiff "engaged actively in this litigation and during the mediation process . . . and her meticulous record-keeping was critical to the settlement").

### 5.  Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits" generally "because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."  *Does*, 925 F.3d at 899 (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)).  This factor therefore also supports approval.

### B.  Certification for Settlement Purposes

The Court previously granted conditional certification for settlement purposes.  (D.N. 115, PageID.1427–31)  There is no indication that any of the factors supporting certification have changed since that ruling; thus, certification for settlement purposes remains appropriate.  *See* Fed. R. Civ. P. 23(a), (b)(3).

---

[9] Class counsel did not comply with the Court's directive to "provide specific documentation . . . of the time actually spent on the case by [Vail]."  (D.N. 115, PageID.1425 (citing *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 311 (6th Cir. 2016)))  The lack of documentation will not prevent approval here because there were no objections to the service award (D.N. 125-2, PageID.1576 ¶ 32; D.N. 128-2); class counsel supplies other assurances of Vail's contributions (*see, e.g.*, D.N. 123-2, PageID.1501); and the service award is relatively modest (*see* D.N. 123-1, PageID.1471–72). *See Kimble v. Am. Home Warranty Corp.*, No. 23-10037, 2024 WL 3325705, at *1, *4 (E.D. Mich. July 8, 2024).  The Court notes, however, that more thorough documentation of a class representative's contributions is always preferred. *See Shane Grp.*, 825 F.3d at 311 (attorney time sheets).

**C.**     **Notice to Class Members**

Rule 23 requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Court previously approved the form and contents of the notice and its distribution via first-class mail and newspaper publication. (*See* D.N. 115, PageID.1431–32; *see also* D.N. 125-4, PageID.1592–95 (proof of mailing), 1597–98 (proof of publication in The Courier-Journal))

The claims administrator did not indicate that any mailings were returned as undeliverable. (*See* D.N. 125-4) Further, only four class members opted out. (D.N. 125-2, PageID.1576 ¶ 30–33; D.N. 128, PageID.1617) Thus, fewer than 0.09% of class members opted out of the settlement, and around 13.2% of class members timely returned claim forms. These figures do not raise concern as to the adequacy of the settlement. *See* 4 *Newberg and Rubenstein on Class Actions* § 13:58 (6th ed. 2026) ("[T]he opt-out rate in most class actions is well below 1% of the class." (citation omitted)).

### III.

In sum, the Court finds the parties' settlement to be fair, reasonable, and adequate. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     Vail's unopposed motion for final approval (D.N. 125) is **GRANTED**.

(2)     Vail's motion for attorney fees and costs (D.N. 123) is **GRANTED**.

(3)     The Court adopts the defined terms in the Settlement Agreement (D.N. 123-1).

(4)     The following class is certified for settlement purposes only:

13

> **"All owner/occupants and renters of residential property residing within one (1) mile of the Facility's property boundary at any time from July 11, 2020, to the present."**

(5)    The Court confirms the appointment of Nicholas Vail as Class Representative and the service award to Vail in the amount of $5,000, as set forth in the Settlement Agreement.

(6)    The Court confirms the appointment of Liddle Sheets Coulson, P.C. and Gray & White as Class Counsel for the settlement class and approves the request for attorney fees of $150,000 and reimbursement of up to $45,000 in litigation costs.

(7)    The Court finds that as of the date of this Order, each and every class member who did not submit a timely and valid request for exclusion has waived and released claims as set forth in the Settlement Agreement and Notice of Settlement.

(8)    The Court directs the parties to effectuate the settlement terms as set forth in the Settlement Agreement and Liddle Sheets Coulson, P.C. to calculate and pay the claims of the class members in accordance with the terms set forth in the Settlement Agreement.

(9)    This matter is now **CLOSED** and **STRICKEN** from the Court's docket.  The Court retains jurisdiction to enforce the terms of the settlement, including settlement payments.

July 14, 2026

**David J. Hale, Chief Judge**
**United States District Court**

14